| | |
|---|---|
| JANET LEIGH SIMPSON, | |
| Plaintiff, | Case No. 3:17-cv-01077 |
| v. | Judge Trauger |
| | Magistrate Judge Newbern |
| ROGER SCOTT BASKIN and RANDALL BASKIN, | |
| Defendants. | |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This action has been referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1) for report and recommendation on all dispositive motions. (Doc. No. 4.) Now pending is a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) by Defendants Roger Scott Baskin and Randall Baskin. (Doc. No. 6.) For the following reasons, the undersigned RECOMMENDS that the motion to dismiss be GRANTED and that this action be DISMISSED WITHOUT PREJUDICE to Plaintiff Janet Leigh Simpson filing an amended complaint.

### I.     Background

#### A.  Simpson's Allegations

Plaintiff Janet Leigh Simpson, proceeding pro se and *in forma pauperis*, filed this action under the Fair Labor Standards Act (FLSA)[1] on July 24, 2017, alleging that Defendants Roger

---

[1]      Simpson used a standard civil pleading form to draft her complaint. (Doc. No. 1.) On that form, and on the civil cover sheet attached to Simpson's complaint, Simpson checked boxes stating that her action invoked the Court's diversity jurisdiction. (*Id.* at PageID# 14; Doc. No. 1-1, PageID# 6.) Simpson did not check the box for FLSA actions in the "Nature of Suit" section. (Doc.

Scott Baskin (RSB) and Randall Baskin (RB) collectively owe her $391,000.00 in unpaid wages. (Doc. No. 1, PageID# 15.) Simpson's complaint states that, "[f]or almost 12 years [RSB] worked [her] 7 days a week without any monetary benefits, which included overtime most days for several businesses he owned." (*Id.* at PageID# 15–16.) Simpson claims that "[RSB] never paid [her] a wage and . . . stated that it wasn't his responsibility to provide [her] with a wage." (*Id.* at PageID# 15.) Simpson asks the Court to "order [RSB] to pay [her] the back wages owed of $292,022 dollars.[2] This includes back wages and overtime payments." (*Id.*)

With regard to RB, Simpson alleges that he "only paid [her] a partial wage which was well below the Federal Minimal [sic] Wage." (*Id.*) Simpson states that she "worked for [RB] for 12 years" and that RB "only paid [her] $130.00 cash weekly for almost 10 years." (*Id.* at PageID# 16.) Simpson claims that RB "cheated [her] out of payment of wages," paying her only half the amount she had earned by taking care of RB's wife. Simpson alleges that "[RB] stated Medicare would pay for $600, so he only paid [Simpson] a total of $300 monthly from 10/2016–4/2017 which include[d] the $130 [she] was given before these dates." (*Id.*) Simpson seeks payment of $81,600.00 in lost wages from RB. (*Id.*)

No. 1-1, PageID# 6.) However, elsewhere in the complaint and cover sheet, Simpson states that her cause of action is based on 29 U.S.C. §§ 216(b)–(c), indicating that she brings her claims under the FLSA and the Court's federal question jurisdiction. (Doc. No. 1, PageID# 14; Doc. No. 1-1, PageID# 6.) RSB and RB are correct that there has been no showing that the parties are diverse, but that the Court has subject matter jurisdiction over Simpson's FLSA clams under 28 U.S.C. § 1331. (*See* Doc. No. 7, PageID# 28.)

[2] Elsewhere, Simpson states that she is owed $309,400.00 from RSB. (Doc. No. 1, PageID# 15.)

Simpson filed a response in opposition to the motion to dismiss that includes facts not alleged in her complaint.[3] (Doc. No. 13, PageID# 70–72.) While factual allegations made in a plaintiff's response are generally not properly considered in reviewing a motion to dismiss, the Court has more leniency in this regard when a plaintiff appears pro se. *See Harding v. Davidson Cty. Sheriff's Office*, No. 3:13-CV-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013). Because Simpson could move to amend her complaint to allege these additional facts, the undersigned will include them in considering the motion to dismiss. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that the court should have "read all of [plaintiff's] filings together before dismissing [the] case"); *Harding*, 2013 WL 5774937, at *3; *Hamby v. Gentry*, No. 3:12-CV-01296, 2013 WL 3315494, at *2 (M.D. Tenn. July 1, 2013).

In her response, Simpson states that RSB hired her in 2005 as "personal assistant by the Baskin & Company, in which RSB was the owner," beginning a "long-term employer/employee relationship . . . that lasted for almost 12 years." (Doc. No. 13, PageID# 70.) RSB originally paid Simpson "the wages they agreed upon," but soon "halted paying [her] any wages." (*Id.* at PageID# 70–71.) RSB "continued to use the business Baskin & Company to assign work to [Simpson]." (*Id.* at PageID# 71.) The work included "delivering checks and payments to RSB business associates, filing company paperwork, driving RSB and associates, cleaning business and properties, as well as various miscellaneous duties." (*Id.*) With regard to RB, Simpson states that

---

[3] RSB and RB filed their motion to dismiss on August 28, 2017. (Doc. No. 6.) On September 9, 2017, Simpson filed what was docketed as a response in opposition to the motion (Doc. No. 8) and "Plaintiff's objection" to the motion (Doc. No. 9). In these identical filings, Simpson states that, although the motion to dismiss was filed electronically on August 28, 2017, she did not receive it in the mail until September 6, 2017, and she asks for an unspecified amount of time to respond. (Doc. Nos. 8, 9.) Simpson filed her response in opposition on October 2, 2017, (Doc. Nos. 12, 13.) Defendants do not argue that Simpson's response is untimely and the undersigned will consider it as if it had been timely filed.

she provided "companionship services" to RB's wife and also performed other tasks similar to those that she was assigned by RSB. (*Id.* at PageID# 72.) She also states that RB "issued a Form W-2" to her. (*Id.*) Simpson alleges that RSB and RB "exercised control over [her] employment by hiring her, supervising her, and ultimately terminating her" and that she was "explicitly informed" that Baskin & Company "was owned by both Defendants." (*Id.*) Finally, Simpson concedes that the FLSA's statute of limitations applies to her claims, but argues that, because RSB and RB willfully violated the law, the limitations period should be three years rather than two. (*See id.* at PageID# 73–74 (citing 29 U.S.C. § 255(a).)

### B. RSB and RB's Motion to Dismiss

RSB and RB now move to dismiss Simpson's complaint for failure to state a claim. (Doc. No. 6.) They argue as a threshold matter that, because Simpson failed to allege that either defendant "employed" her within the meaning of the FLSA, her claims cannot proceed. (Doc. No. 7, PageID# 30.) Specifically, RSB and RB find Simpson's failure to plead that she was an employee as opposed to an independent contractor fatal to her claims. (*Id.*) RB also argues that the work Simpson alleges she performed as his wife's caretaker falls under the FLSA's domestic service exemption and, further, that Simpson's complaint "contains no allegations which, if true, could establish that RB failed to pay an appropriate hourly minimum wage" or "failed to make proper overtime payments." (*Id.* at PageID# 31.) Finally, RSB and RB argue that any viable claims Simpson may have pleaded are subject to the FLSA's two-year statute of limitations and that "any attempt to recover wages that were allegedly not paid prior to July 24, 2015," must be dismissed. (*Id.* at PageID# 30.)

RSB and RB filed a reply that responds to Simpson's additional allegations.[4] (Doc. No. 14.) In it, RSB and RB argue that there is no "Baskin & Company" corporate entity and that Simpson's additional allegations still do not establish that "she worked for RSB and/or RB as an employee (as opposed to an independent contractor)." (*Id.* at PageID# 88.) RSB also argues for the first time that Simpson failed to allege adequately that he did not pay her the minimum wage. (*See id.*)

## II.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court views the plaintiff's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

---

[4]      Although RSB and RB did not seek leave of court to file a reply brief, the undersigned will consider their reply and its novel arguments here in light of the additional factual allegations included in Simpson's response.

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Although a time-barred claim will typically provide no entitlement to relief, a plaintiff does not have to plead that a claim is timely in order to satisfy Rule 8(a). *See* Fed. R. Civ. P. 8(a); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("[t]he statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim). Nevertheless, when the allegations in a complaint "affirmatively show that [a] claim is time-barred," it is appropriate to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))..

## III.    Analysis

The FLSA was enacted to establish national minimum wage and maximum hour standards for "the unprotected, unorganized and lowest paid of the nation's working population." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). The FLSA requires qualifying employers to pay each covered employee a statutory minimum wage. 29 U.S.C. § 206(a). A covered employee who works more than forty hours in a given week must receive compensation at an overtime rate of one and one-half times the regular rate of pay for each hour worked in excess of forty. *Id.* § 207(a). An employer who violates the minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *Id.* § 216(b). To prevail on a FLSA overtime or minimum wage claim, "a plaintiff must prove, by a preponderance of the evidence, that [she] 'performed work for which [she] was not properly compensated.'" *Moran*, 788 F.3d at 204. (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

The FLSA does not cover all workers or employers. To receive its overtime and minimum wage protections, an employee must be "engaged in commerce or in the production of goods for commerce," "or employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). Some types of work—like "companionship services" provided in connection with domestic employment—are categorically exempt from the FLSA's protections. *See id.* § 213(a)(15). However, in defining the FLSA's coverage, the Supreme Court has construed the statute "to apply to the furthest reaches consistent with congressional direction, recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1953) (internal citations omitted).

To state a claim under the FLSA, a plaintiff must allege facts sufficient to prove (1) the existence of an employer-employee relationship, (2) the employee's acts which are protected by the FLSA, and (3) the employer's failure to pay the employee overtime or a minimum wage as required for those acts. *Carter v. Jackson-Madison Cty. Hosp. Dist.*, No. 1:10-CV-01155-JDB-egb, 2011 WL 1256625, at *5 (W.D. Tenn. Mar. 31, 2011) (citing *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 1811550, at *2 (E.D. Ky. June 25, 2009)). A cause of action for unpaid minimum or overtime wages under the FLSA must be commenced within two years after the action accrued, unless it "aris[es] out of a willful violation." 29 U.S.C. § 255(a). Claims alleging a willful violation of the statute must be initiated within three years of accrual. *Id.*

RSB and RB move to dismiss Simpson's claims for two common reasons: (1) Simpson has not pleaded facts that would allow the Court to conclude that either was her "employer" or that she was an "employee" falling under the FLSA's coverage (Doc. No. 7, PageID# 29); and (2) any viable claim Simpson states must be subject to the FLSA's two-year statute of limitations. (*Id.* at

PageID# 30.) RB argues that Simpson has not pleaded facts upon which the Court could find that he did not pay her the minimum wage or appropriate overtime and that Simpson is exempt from FLSA coverage because she provided domestic companionship services to his wife. (*Id.* at PageID# 31–32.) Finally, RSB argues that Simpson also has not pleaded facts sufficient to support a claim that he failed to pay her a minimum wage. (Doc. No. 14, PageID# 88).

**A. Simpson's Employment Status**

The FLSA's protections regarding overtime and minimum-wage compensation apply only to workers who meet the statute's definition of an employee. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). However, neither the "labels that [the] parties may attach to their relationship" nor "classifications under other statutes" control whether a worker is covered by the FLSA. *Ellington v. City of East Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012) (internal citations omitted). Instead, the "striking breadth" of the FLSA's remedial purpose "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An employee, in turn, "means any individual employed by an employer," subject to certain exceptions. *Id.* § 203(e)(1). The FLSA includes within the definition of "employ" any relationship in which a person "suffer[s] or permit[s another] to work." *Keller*, 781 F.3d at 807 (quoting 29 U.S.C. § 203(g)). However, "[i]ndependent contractors do not enjoy FLSA's protections." *Id.* at 806.

RSB and RB first argue that Simpson has not pleaded specific facts sufficient to establish that either was her employer. (Doc. No. 7, PageID# 29.) In her complaint, Simpson alleges that RSB "worked [her] 7 days a week" (Doc. No. 1, PageID# 15), and that she "worked for [RB] for

12 years" (*id.* at PageID# 16). In her response, Simpson states that she and RSB "entered in a long-term employer/employee relationship with an agreement by RSB that lasted for almost 12 years." (Doc. No. 13, PageID# 70.) She states that RSB "hired" her as a personal assistant and "assign[ed] work" to her. (*Id.* at PageID# 70–71.) The work included "delivering checks and payments . . . filing company paperwork, driving RSB and associates, cleaning business and properties [and] . . . miscellaneous duties." (*Id.* at PageID# 71.) Regarding RB, she states that she "was given a number of tasks that led to be employment by RB," and that RB "instructed" her to do work and issued her a W-2 form. (*Id.* at PageID# 72.) The tasks RB assigned included "nearly the same responsibilities" as her work for RSB, but also included caring for RB's wife. (*Id.*) Taking these allegations as true, Simpson has adequately alleged that RSB and RB "suffer[ed] or permit[ted] [her] to work" for them. 29 U.S.C. § 203(g).

Simpson has also adequately pleaded that RSB and RB are proper defendants to claims arising out of work she performed for "Baskin & Company," a business that she claims RSB and RB owned (Doc. No. 13, PageID# 70–72).[5] Simpson states that, although RSB and RB employed

---

[5]    RSB and RB state that Simpson's allegations concerning "Baskin & Company" are "demonstrably false as the Court can take judicial notice of the fact that neither RSB nor RB own or ever owned a company named 'Baskin & Company.'" (Doc. No. 14, PageID# 88.) "Indeed," they continue, "Lexis and google searches reveal no hits for a company named 'Baskin & Company' that is related to RSB or RB." (*Id.*) They also state that Simpson "does not allege any information that would provide [them] with notice of what business [she] allegedly was employed by." (*Id.* at PageID# 90.) These assertions are not well taken.

Although it is true that a Lexis search of "Baskin & Company" does not produce a match, a Lexis search using the address Simpson provides for RSB shows "The Baskin Company LLC," a "full-service restaurant" with eight employees. That company is actively registered with the Division of Business Services of Tennessee's Department of State, with its principal address matching that of RB. *Bus. Entity Detail, The Baskin Co., LLC*, Tenn. Sec. of State, https://tnbear.tn.gov/Ecommerce/FilingDetail.aspx?CN=168118246216250090240079075123055059005048048046 (last visited Feb. 26, 2018); (Doc. No. 13, PageID# 13). Defendants' statement that there is "certainly no such company affiliated with RSB or RB" therefore appears to be in error. (Doc. No. 14, PageID# 88 n.1.)

her "under the guise of [Baskin & Company]," they were the ones who paid her (Doc. No. 1, PageID# 16; Doc. No. 13, PageID# 70–71) and "exercised control over [her] employment by hiring her, supervising her, and ultimately terminating her . . . ." (Doc. No. 13, PageID# 72.) An individual who "act[ed] directly or indirectly in the interest of" a corporate entity falls under the FLSA's definition of an employer. *Wheck v. Bd. of Trs. of the Ky. Teachers' Ret. Sys.*, No. 3:15-CV-692-CRS, 2016 WL 5796915, at *6 (W.D. Ky. Sept. 30, 2016) (quoting 29 U.S.C. § 203(d)). Again, taking Simpson's allegations as true, she has adequately pleaded that RSB and RB were her employers for purposes of claims arising out of work she performed for their corporate entity.

RSB and RB next argue that Simpson has not pleaded sufficient allegations that, "if accepted as true, could establish that she was an employee rather than an independent contractor for either Defendant." (Doc. No. 7, PageID# 29.) "To effect Congress's broad purpose" in enacting the FLSA, the Court looks "to see whether a worker, even when labeled as an 'independent contractor,' is, as a matter of 'economic reality,' an employee." *Keller*, 781 F.3d at 804 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.")). In making this determination, the Court is guided by a multi-factor "economic reality" test that weighs:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6) ] whether the service rendered is an integral part of the alleged employer's business.

*Keller*, 781 F.3d at 807 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984)). The defendant's "authority to hire or fire the plaintiff" and whether the defendant "maintains the

plaintiff's employment records" are other factors the Court may consider. *Id.* (quoting *Ellington*, 689 F.3d at 555).

Simpson has pleaded facts sufficient to create an inference that she was RSB and RB's employee and not an independent contractor. First, independent contractors generally have "variable or impermanent working relationships . . . because they 'often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and indefinite in duration.'" *Keller*, 781 F.3d at 807 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998)). Simpson alleges that she worked continuously for RSB and RB for twelve years. (*See* Doc. No. 1, PageID# 15–16.) There is no indication that, during those twelve years, Simpson worked for any other employer; indeed, her overtime claim allegations indicate that she would not have had time to perform other work. *See Keller*, 781 F.3d at 809–09; (Doc. No. 1, PageID# 15). Simson's work for RSB and RB included "delivering checks and payments to RSB business associates, filing company paperwork, driving RSB and associates, cleaning business and properties," and "various miscellaneous duties" such as caring for "numerous animals" and "RB's sick[,] elderly wife." (Doc. No. 13, PageID# 71–72.) The alleged facts support an inference that Simpson had little control over her work, that RSB and RB assigned her tasks, and that there was a relative lack of skill or training required to perform them—all hallmarks of an employer-employee relationship. *See Johnson v. Mueggenborg*, No.16-CV-659-GKF-JFJ, 2017 WL 4158633, at *2 (N.D. Okla. Sept. 19, 2017) (concluding that similar tasks performed by a personal assistant, such as "bookkeeping, paying the bills, accessing [defendant's] debit and checking accounts, tracking rent payments" were indicative of an employee relationship). Simpson also alleges that RSB and RB "supervis[ed]" the work she did. (Doc. No. 13, PageID# 72.) Finally,

Simpson alleges that RSB and RB had the authority to hire and fire her and that RB issued her a W-2 Form, not the IRS Form 1099 issued to independent contractors. *See Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 612 (6th Cir. 1987) (finding significant to independent contractor analysis that employees received W-2 forms instead of 1099 forms). ( Taking these allegations as a whole, Simpson has pleaded sufficient facts to show that she was an employee of RSB and RB and not an independent contractor.[6] *See Keller*, 781 F.3d at 807.

## B. Simpson's Wage and Hour Claims

RSB and RB next argue that the Court must dismiss Simpson's claims because she has not adequately pleaded facts to establish that either violated the FLSA's minimum wage and overtime protections. RB argues that Simpson has not pleaded that she worked more than forty hours in any week or facts to support her claim that RB did not pay her a minimum wage. (Doc. No. 7, PageID# 31–32.) RSB argues simply that Simpson has not alleged that RSB failed to pay her a minimum

---

[6]     The defendants do not raise this issue and the Court need not consider it as grounds for dismissing Simpson's complaint. However, the undersigned notes that the FLSA's minimum wage and overtime protections are only available when (1) an employee personally, or (2) the employer's enterprise, "is engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). Courts in this circuit have not required plaintiffs to allege this element of a FLSA claim in detail. *See Burman v. Everkept, Inc.*, No. 1:15-CV-596, 2017 WL 1150664, at *3, 5 (W.D. Mich. Mar. 27, 2017) (holding that plaintiffs had adequately pleaded enterprise coverage where they alleged that defendant was an enterprise engaged in interstate commerce with annual sales of not less than $500,000, and described their role as "residential pick-up drivers' for defendant's "garbage, recycling, and yard waste collection business"); *Duby v. Shirley May's Place, LLC*, No. 16-11443, 2017 WL 1021062, at *5 (E.D. Mich. Mar. 16, 2017) (plaintiff's allegations that he handled and sold goods "moved in or produced for interstate commerce" as a retail clerk in a convenience store were sufficient to establish that he was engaged in commerce at the motion to dismiss stage); *Gulden v. Menages, Inc.*, No. 3:14-cv-1041, 2014 WL 4232791, at *3 (M.D. Tenn. Aug. 25, 2014) (concluding plaintiff had sufficiently alleged individual coverage by claiming that he "handled and unloaded goods from outside the state to be sold to club patrons"). Simpson's allegations, however, provide no basis on which the Court could find that she or her employer engaged in commerce or the production of goods for commerce. *See Anderson v. GCA Servs. Grp. Of N. Carolina, Inc.*, No. 1:15-CV-37-GNS, 2015 WL 5299452, at *4 (W.D. Ky. Sept. 9, 2015) ("[p]laintiffs or their employer must be engaged in interstate commerce to receive the FLSA's protections, and nothing in the Complaint satisfies that requirement").

wage. (Doc. No. 14, PageID# 88.) Finally, RB argues that Simpson's claims regarding her care for RB's wife are barred by the FLSA's domestic service exemption. (Doc. No. 7, PageID# 31.)

In the wake of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), federal courts have "diverged somewhat" as to the degree of specificity required to plausibly allege FLSA minimum wage or overtime violations. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Courts are united in holding that plaintiffs are not required to "plead in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641, 645 (9th Cir. 2014). This recognizes the FLSA's remedial purpose and the fact that "employers, rather than employees, maintain the records of wages, hours, and other employment data." *Mabry v. Directv, LLC*, No. 3:14CV-00698-JHM, 2015 WL 5554023, at *4 (W.D. Ky. Sept. 21, 2015) (citing *Doucette v. DIRECTV, INC.*, No. 2:14-CV-02800-tmp, 2015 WL 2373271, at *7 (W.D. Tenn. May 18, 2015)); *Noble*, 2009 WL 1811550, at *3 (finding it "not surprising that [specific facts supporting plaintiff's overtime claim] are not provided in the Complaint" because "[t]he employer, not the employee, bears the burden of maintaining records of how many hours an employee works each week and the employee's pay rate").

The divergence occurs as to what facts must be affirmatively pleaded with what level of specificity to state a plausible claim. The First, Second, Third, and Ninth Circuits have required plaintiffs to allege facts with regard to at least one specific workweek in which a wage or hour violation occurred to establish the basis for a FLSA claim post-*Twombly* and *Iqbal*. *See Landers*, 771 F.3d at 641 (holding that, to state a claim for a minimum wage or overtime violation under the FLSA, a plaintiff must allege that "there was a given week in which [the plaintiff] was entitled to

but denied minimum wages or overtime wages"); *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (concluding that plaintiffs had failed to state an overtime claim under the FLSA where they failed to allege "a single workweek in which [they] worked at least forty hours and also worked uncompensated time in excess of forty hours."); *Dejesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013) (affirming district court's dismissal of complaint that alleged plaintiff worked overtime in "some or all workweeks" but not a given workweek); *Pruell v. Caritas Christi*, 678 F.3d 10, 13–15 (1st Cir. 2012) (concluding that plaintiffs had failed to state an overtime claim by alleging that they "regularly worked hours over 40 in a week and were not compensated for such time" but remanding to allow plaintiffs to amend their complaint).

The Sixth Circuit has not yet articulated a post-*Twombly* FLSA pleading standard. However, its district courts have largely "rejected attempts to tighten the post-*Twombly*/*Iqbal* pleading standard under the FLSA." *Comer v. Directv, LLC*, No. 2:14-CV-1986, 2016 WL 853027, at *9–10 (S.D. Ohio Mar. 4, 2016) (collecting cases and finding that plaintiffs had adequately pleaded a minimum wage violation by estimating both their average workweek and their average weekly wage and alleging that "in an average workweek they were not paid . . . minimum wage"). In practice, this has meant that district courts in the Sixth Circuit have allowed actions to go forward in which plaintiffs have pleaded, for example, unpaid or undercompensated hours worked in an average workweek. *See Mabry*, 2015 WL 5554023, at *4 (finding that plaintiffs successfully pleaded a minimum wage claim by providing their employment dates, estimating their average workweek, and alleging they performed specific tasks without payment, resulting in a wage rate below the required minimum); *Doucette*, 2015 WL 2373271, at *7 (same); *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2014 WL 7180164, at *3 (M.D. Tenn. Dec. 16, 2014) (denying defendant's motion to dismiss plaintiffs' minimum wage claim where plaintiffs alleged

that defendants employed them, described their job functions, stated a range of rates at which they were paid, alleged that they were paid less than the minimum wage, and roughly described when they were deprived of pay); *but see Hall v. Plastipak*, No. 15-11428, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015) (citing favorably the heightened FLSA pleading standards adopted by other circuits and finding that plaintiffs' allegations that they regularly worked over forty hours per week during the relevant employment period were not specific enough to state an overtime claim).

To allege that she was not paid overtime, Simpson states that she worked for RSB "7 days a week without any monetary benefits, which included overtime most days" and that RSB owes her back wages of $292,022.00 that "include[] . . . overtime payments." (Doc. No. 1, PageID# 15.) Simpson does not allege that she worked in excess of forty hours a week regularly or on any particular week, or the rate at which RSB paid her. (*Id.*) Other than alleging that she worked for RSB "full-time," Simpson provides no information about her work schedule. (*See* Doc. No. 13, PageID# 70.)

Even under a more-inclusive pleading standard, Simpson's allegations are too threadbare to state a claim. Simpson states only that she worked and is owed overtime, but provides no facts to support that conclusion. Her complaint falls short of allegations that have been found sufficient in other cases, even under a more lenient pleading standard. *See Hill v. Meda Painting & Refinishing, Inc.*, 2017 WL 1132206, at *4 (E.D. Mich. Mar. 27, 2017) (plaintiffs adequately pleaded that they worked overtime by alleging that "they '*routinely* worked over 40 hours per week'"); *Comer*, 2016 WL 853027, at *10 (technicians "adequately plead[ed] their unpaid overtime by approximating their weekly hours"); *Hall*, 2015 WL 5655888, at *3 (allegation that plaintiffs regularly worked over 40 hours per week were not specific enough to state an overtime

claim); *Mabry*, 2015 WL 5554023, at *4 (plaintiffs who estimated that average workweek during the employment period was 50 to 60 hours successfully alleged that they had worked overtime); *Roberts v. Corrs. Corp. of Am.*, 3:14-CV-2009, 2015 WL 3905088, at *5–8 (M.D. Tenn. June 25, 2015) (collecting cases and finding that plaintiffs who claimed that they regularly worked over the scheduled 40 hours per week had adequately alleged working overtime). Simpson does not even acknowledge that her claims are based on the forty-hour workweek that FLSA requires. Without even that minimum factual basis, her allegations do not adequately state a claim. *See Whaley v. Henry Ford Health Sys.*, 172 F. Supp. 3d 994, 1001 (E.D. Mich. 2016) (finding that, to state an overtime claim, a plaintiff must plead facts establishing, among other things, that he or she "worked more than forty hours").

Simpson's minimum-wage claims fare little better. Simpson states that RB "only paid [her] $130.00 cash weekly for almost 10 years" and "only paid [her] a total of $300 monthly from 10/2016–4/2017." (Doc. No. 1, PageID# 16.) With regard to RSB, Simpson states that he initially paid her "the wages they agreed upon," but soon "halted paying [her] any wages." (Doc. No. 13, PageID# 70–71.) She also states that RSB "worked [her] 7 days a week without any monetary benefits." (Doc. No. 1, PageID# 15.)

While Simpson does allege a specific weekly and monthly rate of pay that she received from RB, she does not allege the hours that she worked per week or per month for that wage.[7] (*See id.* at PageID# 16.) Nor does Simpson allege how her pay fell below the statutory minimum wage based on that schedule.. (*See id.* at PageID# 15–16.) Without such allegations from which the

---

[7]     Simpson states that she was "hired as a full-time employee by Defendant RSB" twice, as the heading to two sections of her response brief. (Doc. No. 13, PageID# 70, 72.) It may be that Simpson intended to allege that she was also hired as a full-time employee by Defendant RB. Making that inference is not without its own complications, however, as it would require the Court to conclude that Simpson was a full-time employee of both RSB and RB.

Court can conclude that the FLSA has been violated, her complaint does not provide a sufficient factual basis to support a minimum-wage claim against RB. *See Anderson v. GCA Servs. Grp. of N. Carolina, Inc.*, No. 1:15-CV-37-GNS, 2015 WL 5299452, at *4 (W.D. Ky. Sept. 9, 2015) (rejecting plaintiffs' claim that unpaid overtime work left them with a wage that dipped below the required minimum because plaintiffs had not provided their "starting wages" and therefore their claim was "nothing more than conclusory").

Simpson alleges that RSB did not pay her at all. (Doc. No. 1, PageID# 15.) Some courts have found a minimum wage claim successfully alleged on grounds that an employer paid an employee nothing for work performed in a specific timeframe. *See Mendoza v. Little Luke, Inc.*, No. 14-CV-3416 (JS)(GRB), 2015 WL 998215, at * 5 (E.D.N.Y. Mar. 6, 2015) (plaintiffs plausibly alleged that defendants failed to pay them the minimum wage by claiming that defendants did not pay them at all during final two workweeks); *Love v. Fleshman Masonry, Ltd.*, No. 3:13-CV-183, 2013 WL 5725977, at *4 (S.D. Ohio Oct. 21, 2013) (plaintiff's allegation that defendants did not pay him at all for his final week of work was sufficient to support a minimum wage claim). The Court can infer that being paid nothing for work performed falls below any minimum wage. But, in the context of her FLSA complaint, Simpson's allegations that RSB "halted paying [her] any wages" (Doc. No. 13, PageID# 71) or "worked her . . . without any monetary benefits" (Doc. No. 1, PageID# 15) are too conclusory to stand. While Simpson is not required "to plead with specificity the exact number of hours for which [she seeks] compensation, the exact amount in controversy, or the exact times and dates on which the violations allegedly occurred," she must plead facts sufficient to plausibly establish that RSB and RB are liable to her under the statute. *Potts*, 2014 WL 7180164 at *3. Unlike the plaintiffs in *Potts*, for example, Simpson has not pleaded the rate at which she was paid, that she was paid less than minimum wage, or the general

timeframe in which the violations occurred. *See id.* Simpson includes no allegations about her hours worked or the wage she should have received. A complaint that offers only "unadorned, the-defendant-unlawfully-harmed-me accusations" and "naked assertions devoid of further factual enhancement" is not sufficient. *Iqbal*, 556 U.S. at 678. Simpson's allegations again are too sparse to pass muster.

## C. The Domestic Service Exemption

RB argues that Simpson's allegation that she took care of RB's elderly wife "fit[s] squarely within the domestic services exemption" and that Simpson's claims against him are therefore not covered by the statute. (Doc. No. 7, PageID# 31.) In response, Simpson states that, while she did provide companionship services to RB's wife, her work for RB "was more than that"—the "tasks that RB instructed [her] to do included nearly the same responsibilities" that RSB had assigned her. (Doc. No. 13, PageID# 72.) Simpson's allegations do not conclusively show that her claims against RB are barred by this provision.

The domestic services exemption prevents "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves" from receiving the minimum wage and overtime protections of the FLSA. 29 U.S.C. § 213(a)(15). Companionship services include "the provision of fellowship and protection" and also "the provision of care" so long as such care "is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek." 29 C.F.R. § 552.6(a)–(b). "The provision of care means to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light

housework, managing finances, assistance with the physical taking of medications, and arranging medical care)." *Id.* § 552.6(b).

"[A] plaintiff's status as an exempt employee [is] an affirmative defense to claims brought under the FLSA." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). Thus the employee has no obligation to plead the absence of an FLSA exemption to state a claim, and dismissal under 12(b)(6) will only be appropriate if "the allegations in the complaint suffice to establish" that the alleged work is exempt under the FLSA. *Burton v. Appriss, Inc.*, No. 3:13-CV-00316-CRS, 2013 WL 6097107, at *4 (W.D. Ky. Nov. 19, 2013) ("Because the availability of the administrative employee exemption is not 'unequivocally' clear from the face of the complaint, Apriss' affirmative defense 'is improperly presented at the pleading stage.'"). Further, exemptions from the FLSA "are to be narrowly construed against the employers seeking to assert them." *Orton*, 668 F.3d at 847 (quoting *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)).

Simpson's allegations do not "suffice to establish" that the work she performed for RB's wife falls within the FLSA's narrow exemption for "companionship services." 29 U.S.C. § 213(a)(15); *Burton*, 2013 WL 6097107, at *4. Her allegations concerning that work are general and brief—she states only that "[f]or taking care of his sick[,] elderly wife, [RB] cheated [her] out of payment of wages, only paying half the amount." (*See* Doc. No. 1, PageID# 16.) As discussed above, the regulations implementing 29 U.S.C. § 213(a)(15) specifically define the conduct that constitutes "companionship services," and without more detail from Simpson regarding the nature of the "care" she provided, the undersigned cannot conclude that her allegations "affirmatively show" that the work she did comes within the exemption. *See Cataldo*, 676 F.3d at 547; 29 C.F.R. § 552.6(a)–(b). Even if it is assumed that Simpson provided "care" within the meaning of 29

C.F.R.§ 552.6(b), her allegations do not establish that such care did not "exceed 20 percent of the total hours" she worked per workweek. *Id.* § 552.6(b). Further, given that Simpson claims that she performed a range of other tasks for RB (Doc. No. 13, PageID# 72), the undersigned cannot determine from the face of her complaint if she was "engaged in so much non-domestic-service work that she is not fairly characterized as having been 'employed in domestic service'" to provide companionship services. *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 443 (S.D.N.Y. 2012). Because Simpson's allegations do not define the extent of companionship services relative to her other duties, the undersigned cannot conclude that her allegations affirmatively show that this work was exempt from FLSA protection.

### D. Statute of Limitations

"Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'" *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting 29 U.S.C. § 255(a)). "A cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes*, 542 F.3d at 187 (internal quotations omitted). Simpson concedes—and there is no argument otherwise—that her claims are limited by the applicable statute of limitations. (Doc. No. 13, PageID# 73.) RSB and RB do not argue that all of Simpson's claims are time-barred. Instead, they argue that Simpson's complaint appears to seek twelve years of back wages and that that Simpson's claims falling outside the applicable statute of limitations should be dismissed. (Doc. No. 7, PageID# 30.) Simpson responds

that, because RSB and RB "willfully violated" the FLSA, the statute of limitations should be extended to three years. (Doc. No. 13, PageID# 73–74.)

The statute of limitations is an affirmative defense and a plaintiff need not plead that an action is timely in order to state a claim. For that reason, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo*, 676 F.3d at 547. It is only when "the allegations in the complaint affirmatively show that the claim is time-barred" that dismissal under Rule 12(b)(6) is appropriate. *Id.*

[A] FLSA violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Simpson has pleaded no facts from which the Court could find that RSB and RB's conduct was willful in a way that would invoke the longer limitations period. A two-year statute of limitations thus applies to Simpson's claims. Simpson does not plead any facts from which the Court could make the determination as to when her claims accrued. Simpson references only one specific time period in which she worked—from October 2016 to April 2017—which falls within the two-year statute of limitations preceding her July 24, 2017 complaint. (Doc. No. 1, PageID# 16.) Simpson's complaint thus does not "affirmatively show" that her claims accrued outside of the FLSA's two year statute of limitations such that the action must be dismissed. *See Cataldo*, 676 F.3d at 547. However, to the extent Simpson alleges claims accruing outside the FLSA's two-year statute of limitations, those claims are time-barred and should be dismissed.

**IV. Recommendation**

The undersigned finds that Simpson's claims are not sufficient as now pleaded to survive the defendants' motion to dismiss. However, in light of Simpson's additional filings and her pro se status, the undersigned finds it appropriate to afford Simpson the opportunity to amend her complaint to include allegations that meet the plausible pleading standard articulated herein. Accordingly, the Magistrate Judge RECOMMENDS that RSB and RB's Motion to Dismiss (Doc. No. 6) be GRANTED and that this action be DISMISSED WITHOUT PREJUDICE to Plaintiff Janet Leigh Simpson filing an amended complaint.

Any party has fourteen (14) days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days after being served with a copy thereof in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

ALISTAIR E. NEWBERN
United States Magistrate Judge